**Electronically Filed
Supreme Court
SCWC-15-0000445
08-DEC-2016
08:58 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

ASSOCIATION OF APARTMENT OWNERS OF ROYAL ALOHA, a Hawai'i non-profit corporation, Respondent/Plaintiff-Appellant,

vs.

CERTIFIED MANAGEMENT, INC., a Hawai'i corporation;
CHANEY BROOKS & COMPANY, LLC, a Hawai'i corporation;
MICHAEL DAVID BRUSER, an individual; TOKYO JOE'S, INC.,
a Hawai'i corporation; MICHAEL T. MCCORMACK, individually
and as Trustee under that certain unrecorded Michael T.
McCormack Revocable Living Trust Agreement dated
November 12, 1991; and MICHAEL T. MCCORMACK and SIGNA S.
MCCORMACK, as Co-Trustees of The McCormack Ranch Trust
dated January 6, 2005, Petitioners/Defendants-Appellees.

_____

SCWC-15-0000445

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000445; CIV. NO. 12-1-1019-04)

DECEMBER 8, 2016

BY RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

This case arises out of a dispute between the Association of Apartment Owners of Royal Aloha ("AOAO"); its former property managers, Certified Management, Inc. ("CMI") and Chaney Brooks & Co. ("Chaney Brooks"); and its former commercial tenants, Michael D. Bruser, Tokyo Joe's, Inc. ("TJI"), and Michael and Signa McCormack.  As the facts in this case are not disputed, they are taken from the Circuit Court of the First Circuit's ("circuit court") background section in its "Amended Conclusions of Law, and Order Granting Defendant Certified Management's Motion for Summary Judgment, Filed 8/5/14 and Order Granting Joinder by:  Defendant Chaney Brooks & Company, LLC to Defendant Certified Management, Inc.'s Motion for Summary Judgment, Filed 8/12/14."

The Royal Aloha condominium is a mixed-use residential and commercial project located in Waikīkī.  It employed Chaney Brooks as its managing agent from 1995 to 2002, and CMI as its managing agent from 2003-2010.  Bruser and TJI were the owners of commercial unit C-1.  The McCormacks were the owners of commercial unit C-2.  The AOAO installed an electricity submetering system in 1998 and hired electrical engineers to read each unit's electricity submeter, then submit the readings to the managing agent, who would bill each owner for electricity.

2

Between 1998 and 2010, the commercial tenants of C-1 were never billed for electricity, and the commercial tenants of C-2 were erroneously billed for a portion of C-1's electricity costs.

The AOAO sued CMI and Chaney Brooks for, inter alia, breach of contract, breach of fiduciary duty, and negligence, for the billing errors.  The AOAO also sued the commercial tenants to recover hundreds of thousands of dollars in unbilled or erroneously billed electricity costs.

The circuit court granted the property management companies' motion for summary judgment based on the doctrine of laches.  The circuit court also granted Bruser and TJI's (commercial tenants of C-1) motion for partial summary judgment, concluding that the commercial tenants had no obligation to indemnify the AOAO for electricity costs.  The circuit court later amended its order granting the property management companies' MSJ so that all claims against all defendants were barred under the doctrine of laches.

The AOAO appealed.  The ICA issued a published opinion holding that "the defense of laches, as a matter of law, applies only to equitable claims," reversing the grant of summary judgment in the defendants' favor.  Ass'n of Apartment Owners of Royal Aloha v. Certified Mgmt., Inc., 138 Hawai'i 276, 283-84, 378 P.3d 992, 999-1000 (App. 2016) (footnote omitted).

3

Petitioners/Defendants-Appellees CMI, Chaney Brooks, Bruser, TJI, and the McCormacks (collectively, the Joint Defendants) present the following questions in their Joint Application for Writ of Certiorari[1]:

> A.  Whether the ICA gravely erred by holding, "We agree with the AOAO's contention that the defense of laches, as a matter of law, applies only to equitable claims" – a contention never raised by the AOAO in Circuit Court which Petitioners pointed out in their Answering Brief.
>
> B.  Whether the ICA gravely erred by condoning or failing to recognize that the AOAO had materially misstated the Record on Appeal by falsely stating that the AOAO in Circuit Court objected to "using laches to dismiss legal claims" – despite the fact that Petitioners pointed out this misrepresentation in their Answering Brief.
>
> C.  Whether Hawaiʻi law, HRAP Rule 28, and the doctrine of waiver precluded the ICA from basing its Opinion on the AOAO's laches contention – which the AOAO failed to preserve, and did not involve a jurisdictional issue or plain error.
>
> D.  Whether Hawaiʻi law, federal decisions, authority cited in the Opinion, and public policy are contrary to the ICA's holding that "the defense of laches, as a matter of law, applies only to equitable claims."

We accepted certiorari and now hold that laches is a defense at law and at equity, contrary to the ICA's holding that laches is a defense in equity only.

## II.  Background

### A.  Circuit Court Proceedings

#### 1.  Complaint and Answers

On April 13, 2012, the AOAO filed a Complaint against property managers CMI and Chaney Brooks, and commercial tenants

---

[1]     Chaney Brooks filed a joinder to the Joint Application.  Bruser, Tokyo Joe's, Inc., Michael T. McCormack, and Signa S. McCormack also filed a joinder to the Joint Application.

Bruser, TJI, and the McCormacks due to the unbilled or erroneously billed electricity costs. The AOAO alleged the following against either or both of CMI and Chaney Brooks: breach of contract (Count I), breach of fiduciary duty (Count II), and negligence (Count III). The AOAO alleged the following claims only against CMI: negligent misrepresentation (Count IV) and breach of the covenant of good faith and fair dealing (Count V). The AOAO also included the following claims against the commercial tenants Bruser, TJI, and the McCormacks' trusts: indemnification (Count VI) and unjust enrichment (Count VII). Lastly, the AOAO raised claims for surety and guaranty obligations (Count VIII) and declaratory relief (Count IX) against Bruser, the McCormacks, and the McCormack trusts. The AOAO filed its First Amended Complaint three days later, raising the same claims.

Defendant Chaney Brooks filed its Answer, denying the allegations raised in Counts I and II in the Complaint, and raising the defense of laches. Defendant CMI also filed its Answer, denying the allegations raised in all of the counts of the Complaint, raising the defense of unclean hands, and giving notice that it would assert other defenses constituting affirmative defenses as set forth in Hawaii Rules of Civil Procedure Rule 8(c) as the matter progressed. The commercial tenants filed their Answer, denying the allegations raised in

5

all of the counts of the Complaint, and raising the defense of laches.

### 2. Bruser and TJI's Motion for Partial Summary Judgment

Bruser and TJI filed a motion for partial summary judgment **[50:765-91]**, arguing that the AOAO was obligated to bill them the electricity costs but never had; therefore, Bruser and TJI were not responsible for paying the unbilled electricity costs, and the AOAO could not seek indemnification from them under Section 6.02 of the Bylaws for the same. Chaney Brooks and CMI joined in the motion for partial summary judgment. The circuit court granted Bruser and TJI's motion for partial summary judgment. It also dismissed the rest of the claims against Bruser and TJI (i.e., restitution/unjust enrichment and quasi-surety and guaranty) on the grounds of estoppel and laches.

### 3. CMI's Motion for Summary Judgment

Around the same time that Bruser and TJI filed their second motion for partial summary judgment, CMI filed its motion for summary judgment, asking the circuit court to dismiss all claims against it based on the doctrine of laches. It argued that the AOAO knew of the incomplete and incorrect electricity billings around 2000-2002 and waited 10-12 years to bring its lawsuit. CMI argued that the AOAO's delay was unreasonable and resulted in severe prejudice to CMI, as "[c]ritical witnesses have died, critical facts cannot be recalled by those witnesses who have

not passed away, and voluminous documents and records have been destroyed or purged."

CMI acknowledged that this court, in dictum, "cited case law concerning whether laches bar legal claims, independent of the statute of limitations."  CMI was referring to Ass'n of Apartment Owners of Newtown Meadows v. Venture 15, Inc., 115 Hawaiʻi 232, 284, 167 P.3d 225, 227 (2007).  CMI also cited to 27A Am. Jur. 2d Equity § 117 (2014) for the following:  "While some states without separate law and equity courts nevertheless hold laches inapplicable to legal actions, laches increasingly is applied to actions at law, such as actions seeking only damages."  CMI noted that law and equity have merged in Hawaiʻi, as recognized in the Hawaiʻi Rules of Civil Procedure (Rule 2 sets forth only "one form of action to be known as a 'civil action.'").  According to CMI, in other jurisdictions where law and equity have merged, the defense of laches is applicable to legal claims as well as equitable claims.  Specifically, CMI cited Bill v. Bd. of Educ. of Cicero School Dist. 99, 812 N.E.2d 604, 613 (Ill. App. 2004); Teamsters & Employers Welfare Trust of Ill. v. Gorman Bros. Ready Mix, 283 F.3d 877, 881 (7th Cir. 2002); Danjaq LLC v. Sony Corp., 263 F.3d 942, 955 (9th Cir. 2001); Telink, Inc. v. U.S., 24 F.3d 42, 45 (9th Cir. 1994);

7

A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1029 (Fed. Cir. 1992).

Chaney Brooks joined in CMI's MSJ.  The AOAO's memorandum in opposition counter-argued that the AOAO's delay in bringing suit was not unreasonable, and that CMI's unclean hands rendered its laches defense unavailable.  The AOAO did not address CMI's contention that laches is a defense at law and at equity.

The circuit court granted CMI's motion for summary judgment and Chaney Brooks' joinder thereto.  The circuit court later amended its order granting summary judgment solely to note that summary judgment was granted against the AOAO on all claims, in favor of all defendants.  Relevant to this appeal, the circuit court concluded the following:

> 2.  Hawaiʻi recognizes laches as an affirmative defense. Hawaiʻi Rules of Civil Procedure (HRCP) Rule 8(c).  Laches applies to actions at law in states like Hawaiʻi, which have merged law and equity courts.  See HRCP Rule 1, Rule 2, Rule 8(c); Assoc. of Apt. Owners of Newtown Meadows v. Venture 15, Inc., 115 Hawaiʻi 232, 284 (2007) (analyzing laches in an action in law).

The circuit court concluded that the AOAO's delay in bringing its lawsuit was unreasonable, as it knew that electricity was not being billed to the commercial tenants in 2001 or 2001 but waited 10 years to file its Complaint.  The circuit court also concluded that the AOAO's unreasonable delay caused severe and pervasive prejudice to the defendants due to evidentiary challenges, because Chaney Brooks had long since purged its

Royal Aloha documents, there was no written agreement regarding submetered electricity billing, several critical witnesses had died in the interim, and those who remained did not remember details about the submetered electricity billing. The circuit court initially filed its Final Judgment on May 5, 2015, then its Amended Final Judgment in favor of all defendants against the AOAO on June 25, 2015. The AOAO timely appealed.

**B. ICA Appeal**

Relevant to this appeal, the AOAO raised the following point of error: "Whether the Circuit Court committed reversible error in applying the equitable defense of laches as the sole basis for the dismissal of the AOAO's legal claims against CBC, CMI, BRUSER and the MCCORMACKS?" The AOAO argued that laches is an equitable defense and not applicable to actions at law. In support of this argument, the AOAO cited to Adair v. Hustace, 64 Haw. 314, 320-21, 640 P.2d 294, 300 (1982), for the following proposition: Laches "acts to bar a court from considering an equitable action . . . Just as the statute of limitations establishes the requisite degree for actions at law, so is laches the rule for equitable actions." The AOAO also cited the following cases from the United States Court of Appeals for the Eighth Circuit, confining laches to equitable claims: Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 170 (8th Cir.

1995), and Sandobal v. Armour & Co., 429 F.3d 249, 256 (8th Cir. 1970).

In their Joint Answering Brief (filed by all of the defendants), the defendants counter-argued that the AOAO had waived any argument that laches did not apply to actions at law, for failure to raise this argument before the circuit court.  In its Reply, the AOAO did not address the Defendants' contention that it had waived the argument that laches is an equitable, not legal, defense.

In a published opinion, the ICA agreed with the AOAO and held that "the defense of laches, as a matter of law, applies only to equitable claims."  Ass'n of Apartment Owners of Royal Aloha, 138 Hawaiʻi at 283-84, 378 P.3d at 999-1000 (footnote omitted).  The ICA recognized, in a footnote, that "both state and federal courts 'are divided on whether laches applies only to equitable actions or applies also to actions at law.'" 138 Hawaiʻi at 282 n.6, 378 P.3d at 998 n.6 (citing 27A Am. Jur. 2d Equity § 117).  The ICA cited to 27A Am. Jur. 2d Equity § 117 for the following proposition:  "Some courts state that laches is usually available only in suits strictly in equity or in actions at law that involve claims of an essentially equitable character."  138 Hawaiʻi at 283, 378 P.3d at 998.  The ICA then cited to Wells Fargo Bank v. Bank of America, 38 Cal. Rptr. 2d

521, 530 (Cal. Ct. App. 1995), a California case holding that, although declaratory relief is generally an action in equity, whether laches applies in such actions depends upon the nature of the underlying claim.  138 Hawai'i at 283, 378 P.3d at 998. The ICA then considered the AOAO's action to be essentially an action at law, as it sought primarily money damages against all of the defendants, and the declaratory relief sought was a judicial determination that certain defendants breached their contractual obligations, which is a legal claim.  See id. Therefore, reasoned the ICA, laches did not apply in this case, which raised, at bottom, legal claims.  See id.

After vacating, in part, the circuit court's grant of summary judgment to defendants on the basis of laches, the ICA remanded this case to the circuit court to consider "whether some of the separately metered electricity usage costs were billed or charged, and suit filed, within the applicable statute of limitations periods."  138 Hawai'i at 286-87, 378 P.3d at 1002-03.

### III.  Standard of Review

Whether laches is a defense available in an action of law is a question of law reviewable de novo.  See Chirco v. Crosswinds Communities, Inc., 474 F.3d 227, 230 (6th Cir. 2007) ("[W]hen a reviewing court is presented with a threshold question of law as to whether the laches doctrine is even

11

applicable in a particular situation, . . . [its] review is de novo."); Ditto v. McCurdy, 90 Hawai'i 345, 351, 978 P.2d 783, 789 (1999) (noting questions of law are reviewable de novo, under the right/wrong standard).

## IV.  Discussion

The Joint Defendants' first three questions presented all concern whether the AOAO waived the argument that the laches defense applies only to equitable proceedings, and, therefore, whether the ICA gravely erred in addressing the issue.  Despite any failure of the AOAO to raise this argument before the circuit court, the ICA properly addressed the issue on a de novo review of the circuit court's order granting summary judgment in favor of defendants due to laches.  See, e.g., Hawai'i Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000) ("We review [a] circuit court's [grant or denial] of summary judgment de novo under the same standard applied by the circuit court.") (brackets in original, citation omitted).  The circuit court issued a conclusion of law that laches applied to the AOAO's legal claims.  The issue of the applicability of the laches defense is a legal one, which appellate courts also review de novo.  See, e.g., Chirco, 474 F.3d at 230; Ditto, 90 Hawai'i at 351, 978 P.2d at 789 ("Questions of law are reviewable de novo under the right/wrong standard.")

The fundamental issue in this case is contained in the fourth question presented:  whether the ICA gravely erred in holding that "the defense of laches, as a matter of law, applies only to equitable claims."  In Adair, 64 Haw. at 320-21, 640 P.2d at 300, this court summarized the doctrine of laches in Hawaiʻi as follows:

> The doctrine of laches reflects the equitable maxim that "equity aids the vigilant, not those who slumber on their rights."  Where applicable, it acts to bar a court from considering an equitable action . . . because of a perception that it is more equitable to defendants and important to society to promote claimant diligence, discourage delay and prevent the enforcement of stale claims.
> There are two components to laches, both of which must exist before the doctrine will apply.  First, there must have been a delay by the plaintiff in bringing his claim, and that delay must have been unreasonable under the circumstances.  Delay is reasonable if the claim was brought without undue delay after plaintiff knew of the wrong or knew of facts and circumstances sufficient to impute such knowledge to him.  Second, that delay must have resulted in prejudice to defendant.  Common but by no means exclusive examples of such prejudice are loss of evidence with which to contest plaintiff's claims, including the fading memories or deaths or material witnesses, changes in the value of the subject matter, changes in defendant's position, and intervening rights of third parties.

(Citations and footnote omitted.)

In its published opinion, to support its holding that the defense of laches applies only to equitable claims, the ICA quoted Adair, and on its face, Adair appears to confine the defense of laches to equitable claims only, but two subsequent opinions from this court have called that limitation into question.  First, in Newtown Meadows, 115 Hawaiʻi at 284, 167 P.3d at 277, this court had the opportunity to address an AOAO's

13

express argument that, because its negligence suit for damages was an action "[exclusively in law, not in equity[,] . . . the timeliness of suit is governed by law, as set forth in the applicable statute of limitations, not by equity and laches." This court declined to expressly hold that laches applied in equity only and went on to state, "even assuming arguendo that laches governs the timeliness of the AOAO's assertion of its negligence claims against [one of the defendants], [that defendant] has failed to present to this court any evidence of prejudice caused by the claimed unreasonable delay." Id. This court then held "that the circuit court did not err in denying [that defendant's] motion for summary judgment on the AOAO's negligence claims based on laches." 115 Hawai'i at 285, 167 P.3d at 278. Thus, there is precedent for the application of laches to an action at law, even though this court did not outright hold that the defense of laches applied to equitable and legal claims.

Second, in a footnote in Thomas v. Kidani, 126 Hawai'i 125, 131 n.6, 267 P.3d 1230, 1236 n.6 (2011), this court acknowledged that Adair held that the statute of limitations applies to legal actions, and laches applies to equitable actions. The court then noted that the plaintiff in the Thomas case "d[id] not explain the applicability of the equitable doctrine of laches to her legal action for fraud." Id. This court nonetheless went

14

on, as in <u>Newtown Meadows</u>, to "analyze [the plaintiff's] argument assuming, but not deciding, applicability."  <u>Id.</u>  Both <u>Newtown Meadows</u> and <u>Thomas</u> expressly acknowledged that there exists a  question as to whether laches is a defense to legal claims and expressly left open the answer.

In answering the question, the ICA decided that laches was not a defense to a legal claim, and, in its analysis, quoted a portion of a legal encyclopedia, 27A Am. Jur. 2d. Equity § 117, for the following proposition:  "Some courts state that laches is usually available only in suits strictly in equity or in actions at law that involve claims of an essentially equitable character."  <u>Ass'n of Apartment Owners of Royal Aloha</u>, 138 Hawaiʻi at 283, 378 P.3d at 998.  As the Joint Defendants point out in their application, however, the complete quotation reads as follows (with emphasis on language omitted):

<blockquote>
<u>In jurisdictions that have retained separate courts of law and equity, the laches defense may be cognizable only in courts of equity and may be available only where equitable relief is sought.  Laches thus only applies to defeat equitable actions, not actions at law.  Laches particularly does not apply to actions for damages or the recovery of money or property fraudulently obtained.  Likewise, in some states where courts have equity and chancery sides, laches may not apply to legal actions, which include declaratory judgment actions or claims for damages for nonperformance of a contract.</u>

<u>While some states without separate law and equity courts nevertheless hold laches inapplicable to legal actions, laches is increasingly applied to actions at law, such as actions seeking only damages</u>.  Some courts state that laches is usually available only in suits strictly in equity or in actions at law that involve claims of an essentially equitable character.
</blockquote>

27A Am. Jur. 2d Equity § 117 (emphasis added and footnote omitted).  The Joint Defendants argue that, in omitting the emphasized language, the ICA's opinion "rewrites Hawaiʻi law, is inconsistent with Hawaiʻi law and better-reasoned federal and state case law, and is contrary to the judicial trend permitting laches to apply to all claims –- at least in jurisdictions in which courts of equity and law have merged –- which includes Hawaiʻi."

The Joint Defendants' argument is persuasive.  Law and equity merged under the Federal Rules of Civil Procedure ("FRCP") in 1938.  See Ortiz v. Fibreboard Corp., 527 U.S. 815, 846 (1999).  Since that time, in the federal courts on the civil side, "There is one form of action –- the civil action."  Hawaiʻi adopted the Hawaiʻi Rules of Civil Procedure ("HRCP"), patterned after the FRCP, in 1954.  See You Dong Men v. Cho Kyung Ai, 41 Haw. 574, 575 (Haw. Terr. 1957).  This court specifically recognized the "aboli[tion of] courts of equity and courts of law in this jurisdiction," noting that both have been "merged . . . into one 'court' which has cognizance over all civil matters."  Lau v. Valu-Bilt Homes, Ltd., 59 Haw. 283, 291, 582 P.2d 195, 201 (1978).  This court noted that "there is now no distinction between the forms of actions previously cognizable in courts of law or in courts of equity.  With the adoption of

the HRCP, there is now but one form of action called the 'civil action.'  HRCP Rule 2."  59 Haw. at 291-92, 582 P.2d at 201. This court did go on to state, "These developments in the civil procedure of our courts, however, do not eliminate the substantive principles which differentiate actions of an equitable nature from those that are legal in nature."  Id. These statements seem to contradict each other and leave open the question of whether laches is applicable only in equity or at law as well.

We now hold that laches is a defense in all civil actions, in accordance with the modern trend.  The United States Court of Appeals for the Seventh Circuit explained the modern trend to apply laches to legal and equitable claims as follows:

> Laches is an equitable doctrine but one increasingly applied in cases at law (such as this case, since the plaintiff is seeking only damages) as well.  Not only is there a long tradition of applying equitable defenses in cases at law -- indeed, fraud itself is an equitable defense typically interposed in suits at law for breach of contract -- but with the merger of law and equity (Fed. R. Civ. P. 2) there is no longer a good reason to distinguish between the legal and equitable character of defenses. . . .

Maksym v. Loesch, 937 F.2d 1237, 1247-48 (7th Cir. 1991).  Other jurisdictions are in accord.  See also Teamsters, 283 F.3d at 881 ("[A]s with many equitable defenses, the defense of laches is equally available in suits at law.") (citations omitted); Hickerson v. Vessels, 316 P.3d 620, 622 (Colo. 2014) ("[O]ur case law, since early statehood, recognizes the application of

17

equitable remedies [in this case, laches] to legal claims."); Bill, 812 N.E.2d at 612 ("While we agree that traditionally, statutes of limitations were generally applied to legal actions and the laches doctrine was applied to those actions based in equity, such 'mechanical' applications are no longer followed.") (citation omitted); Dep't of Banking and Finance v. Wilken, 352 N.W.2d 145, 149 (Neb. 1984) (Holding that the defense of laches was applicable in a contract action as follows:  "The common-law rule is that equitable defenses cannot be used to defeat an action at law based on contract; however, we have not accepted that position, but, on the contrary, we have held that any defense, whether it be legal or equitable, may be set up in any case.") (citations omitted); Moore v. Starcher, 280 S.E.2d 693, 696 (W.Va. 1981) ("As an equitable concept, this theory is known as laches and it has been infused as well into actions at law.") (citation omitted); McDaniel v. Messerschmidt, 382 P.2d 304, 307 (Kan. 1963) ("Although plaintiff contends the doctrine of laches does not apply to pure actions at law, which he claims this to be, and applies only to suits in equity, our cases do not support his theory.").  We now adopt the rule that laches is a defense to any civil action, which includes both legal or equitable claims.  In this case, the AOAO does not challenge the circuit court's factual findings underlying its conclusion that its unreasonable delay prejudiced the defendants.  Therefore, we

affirm the circuit court's order granting summary judgment, on the basis of laches, in favor of all the defendants on all of the AOAO's claims.

### V.   Conclusion

We now hold that, in this jurisdiction, laches is a defense to legal and equitable claims alike.  We therefore reverse the ICA's August 24, 2016 Judgment on Appeal, and affirm the circuit court's "Amended Conclusions of Law, and Order Granting Defendant Certified Management's Motion for Summary Judgment, Filed 8/5/14 and Order Granting Joinder by: Defendant Chaney Brooks & Company, LLC to Defendant Certified Management Inc.'s Motion for Summary Judgment, Filed 8/12/14" entered on October 10, 2014.

| | |
|---|---|
| John D. Zalewski and Mark G. Valencia for Petitioner/Defendant-Appellee Certified Management, Inc. | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| | /s/ Sabrina S. McKenna |
| Thomas J. Wong and James H.Q. Lee for Petitioner/ Defendant-Appellee Chaney Brooks & Company, LLC | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |



Yuriko Jane Sugimura
for Petitioners/Defendants-Appellees Michael David Bruser,
Tokyo Joe's, Inc., Michael
T. McCormack, and Signa S.
McCormack

Matt A. Tsukazaki
for Respondent/Plaintiff-Appellant